**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

IN RE:                                )
                                      )
VANESSA MYERS,                        )          No.  06-32029
                                      )
                        Debtor.       )

**O P I N I O N**

Before the Court is (1) the objection by the Debtor, Vanessa Myers (Debtor), to the proof

of claim filed by Barclays Capital Real Estate d/b/a Homeq (Barclays) and responses thereto filed

by Barclays and (2) the motion filed by Barclays to strike the Debtor's request for production of

documents and for an accounting and Debtor's brief in opposition to the motion to strike.

The relevant facts in this case are not in dispute.  The Debtor filed her petition for relief

under Chapter 13 on November 22, 2006.  Her proposed Chapter 13 plan, also filed on November

22, provided for monthly payments of $573 for 60 months.  In the proposed plan, the Debtor also

provided for payment of a mortgage arrearage of $4,785.10 and noted that such amount was

disputed. On December 21, 2006, Barclays filed a proof of claim (Claim No. 5) showing a mortgage

arrearage of $7,091.41.  On December 22, 2006, Barclays also objected to confirmation of the

Debtor's proposed plan, asserting that the arrearage was $7,091.41, not $4,785.10 as provided in the

plan.

In response to the objection, the Debtor amended her proposed plan on January 24, 2007 to

provide for the arrearage amount of $7,091.41.  In this first amended plan, the Debtor also added the

following paragraph:

> Debtor reserves the right to lodge a written objection to any proof of claim filed in
> this case at any time either before or after confirmation of the plan.  Inclusion of a
> creditor or information regarding a claim does not constitute waiver of the right to
> object to a Proof of Claim and is not to be deemed an admission.

The Chapter 13 Trustee objected to the proposed plan on several grounds, one of which was that the above quoted language conflicted with the Court's Standing Order 05-01 with regard to objections to claims.[1]  On April 3, 2007, the Debtor filed a Second Amended Plan, which provided for the same $7,091.41 arrearage, but modified the added language to read:

> Debtor reserves the right to lodge a written objection to any proof of claim filed in this case.  Inclusion of a creditor or information regarding a claim does not constitute waiver of the right to object to a Proof of Claim and is not to be deemed an admission or res judicata as to the claim.

The Debtor's Second Amended Plan was confirmed without objection on April 24, 2007.

On May 3, 2007, the Debtor filed a written objection to Claim No. 5 filed by Barclays, asserting that the documentation supporting the claim was insufficient to support the reasonableness and appropriateness of various charges included within the arrearage amount, such as foreclosure fees, foreclosure costs, late fees, and property inspection fees.  The same day, the Debtor served Barclays with a Request for Production of Documents and Request for Accounting.[2]

On June 1, 2007, Barclays responded to Debtor's objection to Claim No. 5, denying the allegations that the documentation was insufficient to support the claim and asserting that the relevant documentation had previously been provided to the Debtor.  Also on June 1, 2007, Barclays filed a motion to strike the Debtor's request for production, asserting:  (1) much of the information sought in the request is not directly relevant to the loan at issue, is privileged, or is beyond the scope of what the Debtor is entitled to review; (2) the request was overly broad; (3) the request was brought merely to harass, cause unnecessary delay or expense; (5) the request was tendered in contravention of Bankruptcy Rule 9011; and (5) Barclays had supplied the Debtor with all relevant

---

[1]Although the Trustee did not elaborate on exactly how the language conflicted with the Court's Standing Order, it appears the objection was to the granting of unlimited time for the Debtor to object in disregard of the deadlines set forth in the Standing Order.

[2]This is actually the Debtor's second discovery request to Barclays.  The Debtor had previously sought discovery related to the arrearage by serving a Request for Production of Documents and Request for Accounting on January 3, 2007.  Barclays objected to the Debtor's request on the grounds that there was no contested matter before the Court as the Debtor had not objected to Barclays' claim.  After a hearing on March 5, 2007, the Court allowed Barclays' objection without prejudice.

information requested via federal express.  Specifically, Barclays requests that paragraphs 5-20 of the Debtor's request for production be stricken.  A few days later on June 4, 2007, Barclays filed a second response to the Debtor's objection to Claim No. 5 requesting the objection be denied as being untimely filed since the Debtor's plan had been confirmed and she was now bound by the arrearage amount stated in the confirmed plan.

The Court held a hearing on Barclays' motion to strike the Debtor's request for production.  At that hearing, Barclays did not argue the grounds alleged in its written motion to strike the Debtor's discovery request; instead, Barclays' sole argument was that the discovery request should be stricken because the Debtor's objection to Claim No. 5 was untimely (which is the same argument Barclays raised in its second response to the Debtor's objection to Claim No. 5).  In response, the Debtor argued, among other things, that the plan contains a provision stating that the plan values are not *res judicata* and that the Debtor had thereby reserved her right to object to any claim, even after confirmation of the plan.  The Court offered the parties time to file additional authority supporting their respective positions and took under advisement the question of whether the Debtor's discovery request should be stricken because her objection to Claim No. 5 was made after confirmation.  The Court noted that if the issue under advisement was not dispositive of the matter before the Court, the Court would have to hold another hearing on the motion to strike and go through the disputed discovery requests one by one.

In response to the Court's invitation to file authority, the Debtor filed a Brief in Opposition to Motion to Strike Debtor's Request for Production of Documents and Request for Accounting in which she argues:  (1) the Debtor reserved her right to object to Claim No. 5 by adding language to her plan reserving her right to do so, and such language is allowed by Standing Order 05-01, which was in effect at the time; (2) Barclays' motion to strike does not raise confirmation of the plan as a defense to the request for production, (3) the motion to strike was not timely filed; and (4) the

3

motion to strike fails to comport with the Federal Rules of Civil Procedure regarding assertions of privilege.

After reviewing the motions, responses and briefs filed by the parties, the Court noted that the ability of the Debtor to challenge Barclays' claim after confirmation had also been raised by Barclays in connection with the Debtor's objection to Claim No. 5.  Specifically, in its response, Barclays asserted that the objection should be denied as untimely because such objection was made after the plan was confirmed.  Because the Court determined that the issues raised in the motion to strike were intricately intertwined with the issues raised by Barclays' response to the Debtor's objection to Claim No. 5, the Court set a hearing on the Debtor's objection to Claim No. 5 and Barclays' response.[3]  After this hearing was held, the issue of whether the Debtor's objection to Claim No. 5 should be denied as untimely was also taken under advisement.

The issue presented in both matters before the Court is whether the language added to Debtor's Chapter 13 plan to reserve her right to object to any claim filed in the case was effective to preserve such right and allow Debtor to challenge Barclays' pre-confirmation proof of claim after confirmation of her plan.  For the reasons set forth below, the Court finds that the additional language was not effective to reserve the Debtor's right to object to Barclays' proof of claim.

The operative sections of the Bankruptcy Code are § 1322, governing contents of a plan, § 1325, providing confirmation standards, and § 1327, setting forth the effect of confirmation.  11 U.S.C. §§ 1322, 1325, and 1327.  While it can be said that there is nothing in §§ 1322 or 1325 which preclude a confirmed plan from reserving the right to object to claims, it can also be said that such a right, if too broad, can impact or destroy the finality intended by confirmation.

In *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000), the Seventh Circuit had to address the

---

[3]The hearing on the Debtor's objection was limited to the issue of whether the Debtor could object to Claim No. 5 after confirmation.

impact of confirmation on a preconfirmation proof of claim and stated:

> These authorities lead us to the conclusion that, when a proof of claim is filed prior to confirmation, and the debtor does not object prior to confirmation, the debtor may not file a post-confirmation collateral action that calls into question the proof of claim. *See Justice Oaks*, 898 F.2d at 1553; *Ross*, 162 B.R. at 789 ("The law is well settled that a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.). Allowing collateral attacks of the type brought by [debtor] would give debtors an incentive to refrain from objecting in the bankruptcy proceeding and would thereby destroy the finality that bankruptcy confirmation is intended to provide [footnotes omitted].

*Id.* at 894-895. The case presently before this Court takes the matter one step further as here the plan has a reservation clause, which was not present in *Adair*.

Under the Bankruptcy Code, the provisions of a confirmed plan bind both the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. 11 U.S.C. § 1327(a). An order of confirmation is binding as to issues that were raised or could have been raised in the confirmation proceeding. *See Adair*, 230 F.3d at 895 (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1553 (11th Cir. 1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990)). The only rights which may be asserted by a party after confirmation are those provided for in the plan. *Matter of Marlow*, 216 B.R. 975, 979 (Bankr.N.D.Ala. 1998).

Section 1327(a), providing that a confirmed plan binds both the debtor and each creditor, serves the same purpose as the general doctrine of *res judicata*. *In re Mersmann*, 505 F.3d 1033 (10th Cir. 2007). There must be finality to a confirmation order so that all parties may rely on it without concern that actions that they may later take could be upset because of a later change or revocation of the order. *Id.* (quoting 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (15th ed. rev.)).

Barclays argues that the Debtor cannot challenge the amount of the arrearage because she accepted the amount of arrearage claimed by Barclays in its proof of claim in her Chapter 13 plan, which was confirmed by the Court. In response, the Debtor asserts that she added language expressly reserving her right to challenge all claims to her proposed plan, no one objected, and this

additional language became a binding part of the confirmed plan.

A Chapter 13 debtor may not include provisions in a Chapter 13 plan that are illegal or that violate the due process rights of creditors. *In re Hearn*, 337 B.R. 603, 609 (Bankr.E.D.Mich. 2006). However, several courts have suggested that specific reservation language would be the appropriate method to preserve a cause of action post-confirmation. In *Hearn*, the bankruptcy court noted that there existed an exception, borrowed from the Chapter 11 context and persuasive by analogy, that allowed the *res judicata* effect for a confirmed plan to be avoided if the plan expressly reserved the right to litigate certain claims. *Id*. at 611-12. Other courts have also indicated that an express reservation would be the proper way to preserve post-confirmation actions. In *Matter of Bernard*, 189 B.R. 1017 (Bankr.N.D.Ga. 1996), the court suggested *in dicta* that where a plan includes a reservation by the debtor of a right to bring future claim objections, *res judicata* should "cement terms of that reservation just as it would the rest of the [confirmation] Order . . ." and therefore, "the unique terms of the plan and Order potentially may provide for future objections to [the] claim, notwithstanding 11 U.S.C. 1327(a)." *Id*. at 1020 n.3.

However, to avoid a defense of *res judicata*, the reservation of a cause of action must be both express and the claim or cause of action must be specifically identified. *See D & K Properties Crystal Lake v. Mutual Life Ins.*, 112 F.3d 257, 261 (7th Cir. 1997). In *D & K Properties*, after its Chapter 11 plan was confirmed, the debtor filed a state court action against a creditor whose claim was paid in the bankruptcy proceeding. The confirmed plan contained a blanket reservation of rights clause that provided that the disbursing agent "shall enforce all causes of action existing in favor of the Debtor and the Debtor in Possession." *Id*. at 259. The Seventh Circuit held that this language was not effective to avoid the *res judicata* effect of the confirmed plan because the claim sought to be reserved was not identified in the reservation. *Id*. at 261. A blanket reservation that seeks to reserve all causes of action reserves nothing and is insufficient notice to creditors to satisfy due

6

process.  *Id.*; *see also In re Tippins*, 221 B.R. 11, 22 (Bankr.N.D.Ala. 1998) (holding in a Chapter 13 case that a reservation of all causes of action does not comport with due process because such reservation deprives the creditors of their right to rely on the finality of the confirmation order). According to the Seventh Circuit, "to hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." *D & K Properties*, 112 F.3d at 261.

In this case, the language added by the Debtor purports to reserve her right to object to any claim filed in the case.  The Debtor did not specify that she wishes to reserve her right to object to Barclays' claim.  In fact, in her confirmed plan the Debtor accepted the amount of the arrearage claimed by Barclays.  Accordingly, the Court concludes that the Debtor's blanket reservation of the right to object to all claims is not effective to avoid the *res judicata* effects of the confirmed plan.

Because the reservation language was too broad to be effective, the Court finds that the Debtor is bound by the amount of arrearage she included in her confirmed plan.  This is not a harsh result.  The creditor did not file the proof of claim on the eve of confirmation.  The proof of claim was filed on December 21, 2006, and the Debtor's Second Amended plan was not confirmed until April 24, 2007.  The record indicates that the Debtor knew there was a dispute regarding the amount of the arrearage as she noted that fact in her first proposed plan, which was filed on November 22, 2006.  Thus, the Debtor had ample opportunity to object to the proof of claim and to adjudicate the amount of the arrearage prior to the confirmation hearing or specifically reserve the right to do so, but she failed to do either.

Accordingly, the Debtor's objection to Barclays' proof of claim is denied and Barclays' motion to strike Debtor's request for production of documents and request to have the Debtor's objection to its claim denied are both granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance

with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.


ENTERED: February 6, 2008

_____/s/ William V. Altenberger_____
UNITED STATES BANKRUPTCY JUDGE